<div style="border">

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION**

</div>

| | |
|---|---|
| MEGAN MARIE LADRIGUE,<br>　　　　　Plaintiff,<br><br>v.<br><br>MICHIGAN STATE UNIVERSITY; THE<br>BOARD OF TRUSTEES OF MICHIGAN<br>STATE UNIVERSITY; LAWRENCE<br>GERARD NASSAR (individual & official<br>capacity); and USA GYMNASTICS, INC,<br>　　　　　Defendants. | Case No.<br><br>Honorable<br><br><br>**COMPLAINT AND JURY DEMAND** |

| | |
|---|---|
| GOWER LAW PLC<br>By: Jessica Rose Rieffel (Of Counsel),<br>P82397<br>Attorney for Plaintiff<br>514 E. Midland St.<br>Bay City, MI 48706<br>989-894-0100 (phone)<br>989-894-0200 (fax)<br>Jessica@GowerLaw.com (email) | |

**COMPLAINT AND JURY DEMAND**

**COMPLAINT**

Plaintiff, MEGAN MARIE LADRIGUE, by and through her attorney, Jessica Rose Rieffel, of counsel at GOWER LAW, PLC, and hereby alleges and states the following:

## I.　PRELIMINARY STATEMENT

1.　　This is a civil action for declaratory, injunctive, equitable, and monetary relief for injuries sustained by Plaintiffs as a result of the acts, conduct, and/or omissions of Lawrence Nassar, DO ("Nassar") Michigan State University ("MSU"), Michigan State University Board of Trustees ("MSU Trustees") and USA Gymnastics ("USAG"), and their respective employees,

representatives, and agents, relating to sexual assault, abuse, molestation, and nonconsensual sexual touching and harassment by Defendant Nassar against Plaintiff, a female, who was mostly a minor when the sexual assaults took place under the false auspice of medical treatment for the sexual gratification of Defendant Nassar, and for which was concealed by other Defendants.

## II.      JURISDICTION AND VENUE

2.      Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

3.      This action is brought pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681, *et seq*., as more fully set forth herein.

4.      This is also an action to redress the deprivation of Plaintiffs' constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. §1983.

5.      Subject matter jurisdiction is founded upon 28 U.S.C. §1331 which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

6.      Subject matter jurisdiction is also founded upon 28 U.S.C. §1343 which gives district courts original jurisdiction over any civil actions authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States, and any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

7.      Subject matter jurisdiction is also founded upon 28 U.S.C. § 1332 as it relates to Plaintiff's claims against Defendant USAG for the reason that it grants this court jurisdiction

over all civil actions where the amount in controversy is greater than $75,000.00, exclusive of interest and costs, and the parties are citizens of different states.

8.  Plaintiff further invoke the supplemental jurisdiction of this Court, pursuant to 28 U.S.C.§ 1367(a) to hear and decide claims arising under state law that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

9.  The claims are cognizable under the United States Constitution, 42 U.S.C. §1983, 20 U.S.C. §1681 *et seq*., and under Michigan Law.

10.  The events giving rise to Plaintiff's complaint occurred in Ingham County, Michigan, which sits in the South Division of the Western District Court..

11.  The events giving rise to this lawsuit occurred in Ingham County, Michigan which sits in the Southern Division of the Western District of Michigan.

12.  Venue is proper in the United States District Court for the Western District of Michigan, pursuant to 28 U.S.C. § 1391 (b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

13.  Because Michigan State University is a public university and existing under the laws of the State of Michigan, and Michigan Statutory law requires parties to file a Notice of Intention to File Claim in order to maintain any action against the state, in satisfaction of MCL section 600.6431 Plaintiff filed a Notice of Intent to File Claim with the Michigan Court of Claims on August 20, 2018.

## III.   PARTIES AND KEY INDIVIDUALS

14.  Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

15.  Plaintiff MEGAN MARIE LADRIGUE ("Plaintiff") is a female a resident of Bay

City, Bay County, Michigan. She was a minor child in many or most incidents alleged herein.

16.     Defendant LAWRENCE "LARRY" NASSAR ("Defendant Nassar") is/was at all relevant times, a Doctor of Osteopathic Medicine, and is/was a resident of Michigan.

17.     Defendant MICHIGAN STATE UNIVERSITY ("Defendant MSU") was at all relevant times and continues to be a public university organized and existing under the laws of the state of Michigan.

18.     Defendant MSU receives federal financial assistance and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681(a).

19.     Defendant THE BOARD OF TRUSTEES OF MICHIGAN STATE UNIVERSITY (hereinafter, "Defendant MSU Trustees") is the governing body for Defendant MSU.

20.     Defendant MSU and Defendant MSU Trustees are hereinafter collectively referred to as the MSU Defendants.

21.     Defendant USA GYMNASTICS, INC ("Defendant USAG") was and continues to be an organization incorporated in Indiana, authorized to conduct business and conducting business throughout the United States, including but not limited to Michigan.

22.     From approximately 1996 through 2016, Defendant Nassar worked for the MSU Defendants in various positions and capacities.

23.     From 1986 through approximately 2015, Defendant Nassar also worked for Defendant USAG in various positions and capacities.

## IV.    FACTUAL ALLEGATIONS

24.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

25.     At all relevant times, Plaintiff was a young athlete participating youth gymnastics at Bay Valley Gymnastics Club and/or as a member or participant in USA Gymnastics.

26.     At all relevant times, Defendants MSU, MSU Trustees, and Nassar were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant Michigan State University.

27.     From approximately 1996 to 2016, Defendant Nassar was employed by and an agent of MSU in various positions, including: Associate professor, MSU Division of Sports Medicine, Department of Radiology, College of Osteopathic Medicine; Team Physician, MSU's Men's and Women's Gymnastics Teams; Team Physician, MSU's Men's and Women's Track Field Teams; Team Physician, MSU's Men's and Women's Crew Teams; Team Physician, MSU's Intercollegiate Athletics; Medical Consultant, MSU's Wharton Center for the Performing Arts; and Advisor, Student Osteopathic Association of Sports Medicine.

28.     At all relevant times, including the years 1996 to 2016, Nassar was acting in the scope of his employment or agency with MSU.

29.     Nassar graduated from Michigan State University with a Doctor of Osteopathic Medicine degree in approximately 1993.

30.     Nassar was employed by and/or an agent of USAG from approximately 1986 to 2015, serving in various positions including but not limited to: Certified Athletic Trainer; Osteopathic Physician; National Medical Director; National Team Physician, USA Gymnastics; National Team Physician, USA Gymnastics Women's Artistic Gymnastics National Team.

31.     At all relevant times, Nassar was acting in the scope of his employment or agency with USAG.

32.     As a physician of Osteopathic Medicine, Defendant Nassar's medical care and

treatment should have consisted largely of osteopathic adjustments and kinesiology treatment to patients, including students and student-athletes of MSU, Twistars, and USAG.

33.     Defendant Nassar is not and has never been a medical doctor of obstetrics or gynecology.

34.     While employed by MSU, Nassar practiced medicine at MSU's Sports Medicine Clinic located on MSU's East Lansing, Michigan Campus.

35.     During his employment, agency, and representation with MSU and USAG, and under the false pretense that he was providing proper medical treatment, Defendant Nassar sexually assaulted, abused, and molested Plaintiff by engaging in nonconsensual sexual touching, assault, and harassment including but not limited to digital vaginal and/or anal penetration without Plaintiff's consent and without the consent of Plaintiff's parents.

36.     Beginning in 1999 through 2002, Plaintiff suffered back and/or hip pain as a result of participating in gymnastics and treated with Defendant Nassar at the MSU Sports Medicine Clinic.

37.     MSU and USAG referred and recommended Nassar to Plaintiff for the treatment of her hip and back pain.

38.     During the treatment, Nassar rubbed and digitally penetrated Plaintiff's vagina and anus; unbeknownst to Plaintiff, Nasar was doing this for his sexual gratification.

39.     Nassar misrepresented to Plaintiff and Plaintiff's parents that his "treatment" was the appropriate way to treat Plaintiff's injuries.

40.     Because of Nassar's reputation, Plaintiff and Plaintiff's parents had no reason to doubt Defendant Nassar, as MSU and USAG represented him to a reputable, ethical, and trustworthy doctor and professional.

41.     Nassar did not give prior notice or obtain consent from Plaintiff for the "treatment."

42.     Nassar did not obtain consent from Plaintiff's parents for the treatment for the incidents in which Plaintiff was a minor.

43.     Neither Plaintiff nor Plaintiff's parents consented to the "treatment" by Nassar or to any touching, rubbing, and/or penetration of Plaintiff's vagina, anus, and/or breasts.

44.     Nassar's conduct and actions taken against Plaintiff constituted sexual assault, abuse, and molestation, and was undertaken for Nassar's pleasure and self-gratification.

45.     Nassar used his position of trust and confident in an abusive manner, causing Plaintiff to suffer a variety of injuries including shock, humiliation, emotional distress, and related physical manifestations thereof, embarrassment, loss of self-esteem, disgrace, and loss of enjoyment of life.

46.     Plaintiff and her parents had no reason to suspect Nassar was anything other than a competent and ethical physician based on his affiliations with MSU and USAG, and their representations of Nassar.

47.     Despite learning about criminal charges against Nassar in late August 2016, MUS failed or refused to notify Plaintiff or anyone similarly situated to Plaintiff, even though it was reasonably foreseeable that the allegations against Nassar would become public and Plaintiff and others like her would learn that the treatment they received was not treatment, but instead, a sexual assault, and such information could cause, and did cause, emotional harm and damage.

48.     Plaintiff first learned that allegations of sexual abuse had been brought against Nassar in late 2016, after she was exposed to media releases concerning the allegations against Nassar. It was not until after 2016 that Plaintiff realized that Nassar's treatments were not normal

procedures, but, rather a sexual assault, and violations of Plaintiff's rights, privacy, and trust.

49.     For over 20 years, Nassar had unrestricted and unmonitored access to young athletes through the Sports Medicine Clinic at MSU and USAG, both of which regularly and routinely referred young females, including Plaintiff, to his care.

50.     The State of Michigan's Department of Licensing and Regulatory Affairs Occupational Health Standards regarding Bloodborne Infectious Diseases mandates use of gloves when exposed to potentially infectious material, including vaginal secretions.

51.     In 1997 or 1998, a female gymnastics participant, who was a minor at the time, told MSU gymnastics head coach Kathie Klages about concerns the participant had with Nassar's "treatment." Klages convinced the participant not to file a formal complaint because Klages intimidated the participant by stating there would be serious consequences to her (the participant) and Defendant Nassar.

52.     In or around 1999 an MSU student athlete reported to trainers and her coach, who were both employees of MSU, concerns about Nassar's conduct and "treatment, specifically that  Nassar touched her vaginal area although she was seeking treatment for an injured hamstring; despite this report,  MSU representatives, the athlete's concerns and allegations went unaddressed.

53.     Defendant MSU had an obligation under federal and state law to investigate this report.

54.     Defendant MSU also had the following obligations, among others, pursuant to its Office of Institutional Equity ("OIE") policy: to promptly investigate or otherwise detmerine what occurred and to address instance of relationship violence or sexual misconduct when it knows about such instances; to inform the MSU police of all reports it receives regarding

sexual assaults; to take steps to initiate investigatory process; to take prompt responsive action if a hostile environment exists; to promptly report allegations of sexual misconduct to the Office of Institutional Equity.

55.     Upon information and believe, and in violation of federal law, state law, and the MSU OIE Policy, Defendant MSU failed to take any action in response to the 1999 complaint.

56.     In approximately 2000, a female student athlete, a member of MSU's Women's Softball Team, was sexually assaulted and abused during "treatment" by Nassar and reported Nassar's conduct to MSU's employees, including trainers, yet MSU failed to take any action in response to her complaints.

57.     Upon information and believe, and in violation of federal law, state law, and the MSU OIE Policy, Defendant MSU failed to take any action in response to the 2000 complaint.

58.     Had Defendant MSU taken the appropriate action after these complaints, including but not limited to conducting an investigation, its conclusions would have been different and Plaintiff would not have been assaulted by Nassar.

59.     Because the MSU Defendants took no action to investigate the 1999 or 2000 complaints and took no corrective action, from 2000 to 2016, under the guise of treatment, Plaintiff wasalso sexually assaulted, abused, and molested by Defendant Nassar by vaginal and/or anal digital penetration, without the use of gloves or lubricant and by touching and groping their breasts.

60.     In 2014, following receipt of an unrelated complaint regarding a sexual assault on MSU's campus, between 2014 and 2015 the U.S. Department of Education's Office of Civil Rights (hereinafter "OCR") conducted an investigation regarding the complainant's allegations, another complaint regarding sexual assault and retaliation from 2011, and Defendant MSU's

response to said complaints, and their general policies, practices, and customs pertaining to their responsibilities under Title IX.

61.     The OCR concluded its investigation in 2015 and presented MSU with a twenty-one page agreement containing measures and requirements to resolve the 2011 and 2014 complaints and to bring Defendant MSU in compliance with Title IX.

62.     While the OCR was conducting their investigation, additional complaints regarding Defendant Nassar's conduct surfaced in 2014. The victim reported she had an appointment with Defendant Nassar to address hip pain and was sexually abused and molested by Defendant Nassar when he cupped her buttocks, massaged her breast and vaginal area, and he became sexually aroused.

63.     Upon information and belief, MSU investigated the 2014 complaints through their Office of Institutional Equity.

64.     However, the victim reported to Defendant MSU facts which were omitted or withheld from the investigative report including but not limited to the following

     a. Defendant Nassar was sexually aroused while touching her;

     b. The appointment with Defendant Nassar did not end until she physically removed his hands from her body.

65.     Three months after initiating the investigation, in July 2014, the victim's complaints were dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Defendant Nassar's conduct "medically appropriate" and "not of a sexual nature.

66.     Following the investigation, upon information and belief, Nassar became subject to new institutional guidelines, one of which – it is believed – was that Nassar was not to examine

or treat patients alone.

67.    After receiving allegations of "athlete concerns," in approximately summer 2015, USAG relieved Nassar of his duties.

68.    Defendant USAG failed to notify MSU of the allegations against Nassar or information relating to his dismissal.

69.    From July 2014 to September 2016, despite complaints about Nassar's conduct, the MSU Defendants continued to permit Defendant Nassar unfettered access to female athletes without adequate oversight or supervision to ensure he was complying with the new guidelines.

70.    Defendant Nassar's employment ended with Defendant MSU on approximately September 20, 2016, only after the MSU Defendants became aware that:

    a.  Defendants Nassar and USAG were sued by a former Olympian who alleged she was sexually assaulted by Defendant Nassar;  and

    b.  A former patient of Defendant Nassar, and victim Rachel Denhollander, filed a criminal complaint with the Michigan State University Police Department alleging Defendant Nassar sexually assaulted her when she was 15 years old and seeking treatment for back pain as a result of gymnastics. Denhollander's allegations of sexual assault by Defendant Nassar included but were not limited to:

        i.  Massaging her genitals;

        ii.  Penetrating her vagina and anus with his finger and thumb; and,

        iii.  Unhooking her bra and massaging her breasts.

71.    In late November 2016, Defendant Nassar was arrested and charged in Ingham County, Michigan on three charges of first-degree criminal sexual conduct with a person under

13, and was later released on $1 million bond.

72.     In mid-December 2016, Defendant Nassar was indicted, arrested, and charged in Federal Court in Grand Rapids, Michigan on charges of possession of child pornography and receipt/attempted receipt of child pornography.

73.     According to the federal indictment, Defendant Nassar:

c.    Knowingly received and attempted to receive child pornography between approximately September 18, 2004 and December 1, 2004; and

d.    Knowingly possessed thousands of images of child pornography between approximately February 6, 2003 and September 20, 2016 including images involving a minor who had not attained 12 years of age.

74.     To the best of Plaintiff's knowledge, Defendant Nassar is in federal custody for his conduct related to the changes filed against Defendant Nassar in Ingham County and Federal Court.

75.     Plaintiff was treated by Defendant Nassar at the MSU office at least eleven (11) times from approximately September 22, 1999 through December 29, 2002.

76.     During the first two appointments with Defendant Nassar in 1999, Plaintiff was 15 years old.

77.     During the next seven appointments with Defendant Nassar in 1999 and 2000, Plaintiff was 16 years old.

78.     During the tenth appointment with Defendant Nassar in 2001, Plaintiff was 17 years old.

79.     During the last and eleventh appointment with Defendant Nassar in 2002, Plaintiff was 19 years old.

80.     During the 11 appointments at his office at MSU from 1999 through 2002, Defendant Nassar directed Plaintiff to disrobe, massaged her, including her breasts, and then conducted what Defendant Nassar described as a "spinal evaluation" or "spinal manipulation," which involved digital vaginal and/or anal penetration without gloves or lubrication.

81.     Sometimes the "evaluation" or "manipulation" occurred when no one else was present in the examination room with Plaintiff and Defendant Nassar.

82.     Other times, one of Plaintiff's parents would be present, but Defendant Nassar would position himself so as to block their observation of the examination.

83.     Defendant Nassar did not give prior notice or obtain consent for digital penetration or to touch Plaintiff's vagina, anus, and/or breasts.

84.     Plaintiff did not treat or intend to treat with Defendant Nassar for issues related to obstetrics or gynecology (hereinafter "OB/GYN").

85.     Shortly after her last appointment with Defendant Nassar, Plaintiff quit her gymnastics career.

86.     Based on Defendant Nassar's representations, Plaintiff believed the "treatment" she received to be legitimate medical procedures until after reports surfaced in or about September 2016 of similar allegations made by other women.

87.     Plaintiff has been forced to relive the trauma of the sexual assaults.

88.     Defendant Nassar was recommended to Plaintiff through her participation in youth gymnastic at Bay Valley Gymnastics club USA Gymnastics, INC.

89.     When Plaintiff sought treatment from Defendant Nassar, the MSU Defendants and Defendant USAG represented Defendant Nassar as renowned orthopedic sports medicine physician, purportedly well-respected in the sports medicine community, specifically in the gymnastics

community as the Team Physician for the United States Gymnastics team.

90.     Plaintiff and her parents had no reason to suspect Defendant Nassar was anything other than a competent and ethical physician.

91.     From approximately 1996 to 2016 Defendant Nassar worked for Michigan State University in various positions and capacities.

92.     From 1986 to approximately 2015 Defendant Nassar also worked for USA Gymnastics  in various positions and capacities.

93.     For over 20 years, Defendant Nassar had unfettered access to young female athletes through the Sports Medicine Clinic at MSU, and through his involvement with USAG, who referred athletes, including Plaintiff to his care.

94.     On at least eleven (11) occasions between September 21, 1999 through October 30, 2002, under the guise of treatment, Defendant Nassar sexually assaulted, abused, and molested Plaintiff, who was a minor during nine (9) of the occasion, by nonconsensual vaginal and/or anal digital penetration or other nonconsensual sexual contact and without the use of gloves or lubricant.

95.     In 1997 or 1998, an athlete reported to MSU gymnastics coach Kathie Klages concerns regarding Defendant Nassar's conduct and "treatment," but Klages dissuaded the athlete from completing a formal report by warning the athlete the report would have serious consequences for her (the athlete) and Nassar.

96.     In 1999, a MSU student athlete reported to trainers and her coach who were employees of MSU concerns about Defendant Nassar's conduct and "treatment," yet MSU failed to take any action in response to her complaints.

97.     In 2000, another MSU student athlete reported to trainers concerns about

Defendant Nassar's conduct and "treatment," yet again MSU failed to take any action in response to her complaints.

98.     On some occasions, Plaintiff was seen alone with only herself and Defendant Nassar in the room, without chaperones.

99.     On other occasions, Defendant Nassar would position himself in a manner in which parents or chaperones in the room could not see his conduct.

100.    Because MSU took no action to investigate the 1997 or 1998, 1999, and 2000 complaints and took no corrective action, from 2000 to 2016, under the guise of treatment, Plaintiff was sexually assaulted, abused, and molested by Defendant Nassar by nonconsensual vaginal and/or anal digital penetration, nonconsensual sexual touching of the vaginal and/or anal area without the use of gloves or lubricant, and by nonconsensual touching and groping of her breasts.

101.    Many other young female athletes were also assaulted by Defendant Nassar from 1998 until 2016. Most victims were assaulted at MSU.

102.    Additional complaints regarding Defendant Nassar's conduct surfaced in 2014. A victim reported she had an appointment with Defendant Nassar to address hip pain and was sexually abused and molested by Defendant Nassar when he cupped her buttocks, massaged her breast and vaginal area, and became sexually aroused.

103.    Upon information and belief, Defendant MSU investigated the 2014 complaints through their Office of Institutional Equity, and although the victim reported to Defendant MSU certain facts, some were omitted from the investigative report including but not limited to the following:

        a.      Defendant Nassar was sexually aroused while touching her;

b.    The appointment with Defendant Nassar did not end until she physically removed his hands from her body.

104.    Three months after initiating the investigation, in July 2014, the victim's complaints were dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Defendant Nassar's conduct "medically appropriate" and "Not of a sexual nature."

105.    Following the investigation, upon information and belief Defendant Nassar became subject to new institutional guidelines, one of which – it is believed – was that Defendant Nassar was not to examine or treat patients alone.

106.    Defendant Nassar continued to treat patients alone.

107.    Following the investigation, between approximately 2014 and 2016, additional girls and young women were sexually assaulted by Defendant Nassar.

108.    Through his position with MSU, his notoriety, and support by USAG and MSU, Defendant Nassar used his position of authority as a medical professional to abuse Plaintiff without any reasonable supervision by MSU.

109.    Defendant Nassar carried out these acts without fully explaining the "treatment" or obtaining consent of Plaintiff or her parents.

110.    All of Defendant Nassar's acts were conducted under the guise of providing medical care at his office at the Sports Medicine Clinic at Michigan State University.

111.    The failure to give proper notice or to obtain consent for the purported "treatment" from Plaintiff or her parents robbed them of the opportunity to reject the "treatment."

112.    Defendant Nassar used his position of trust and confidence in an abusive manner causing Plaintiff to suffer a variety of injuries including shock, humiliation, emotional distress and

related physical manifestations thereof, embarrassment, loss of self-esteem, disgrace, and loss of enjoyment of life.

113.    In September 2016, a story was published regarding a complaint filed with Defendant MSU's Police Department titled "Former USA Gymnastics doctor accused of Abuse," which included allegations against Defendant Nassar by a Rachael Denhollander.

114.    Following the September 2016 publication, other victims began coming forward after recognizing that they were victims of sexual abuse at a time when most of them were minors.

115.    Plaintiff has been forced to relive the trauma of the sexual assaults.

116.    In summer 2015, USAG relieved Defendant Nassar of his duties after becoming aware of concerns about his actions.

117.    As early as 1997, representatives of MSU and USAG were made aware of Defendant Nassar's conduct, yet failed to appropriately respond to allegations, resulting in the sexual assault, abuse, and molestation of Plaintiff and other victims. .

118.    In late November 2016, Defendant Nassar was arrested and charged in Ingham County, Michigan on three charges of first-degree criminal sexual conduct with a person under 13.

119.    In mid-December 2016, Defendant Nassar was indicted, arrested, and charged in Federal Court in Grand Rapids, Michigan on charges of possession of child pornography and receipt/attempted receipt of child pornography.

120.    The acts, conduct, and omissions of Defendants MSU, USAG, and Nassar, and their policies, customs, and practices with respect to investigating sexual assault allegations severely compromised the safety and health of Plaintiff and an unknown number of victims, and

have resulted in repeated instances of sexual assault, abuse, and molestation of Plaintiff by Defendant Nassar, which has been devastating for Plaintiff and her family.

121.     This action arises from Defendants' blatant disregard for Plaintiff's federal and state rights, and Defendants' deliberately indifferent and unreasonable response to physician-on-patient/physician-on-student sexual assault, abuse, and molestation.

## V.     CLAIMS AGAINST THE MSU DEFENDANTS

### A.     COUNT 1 – VIOLATION OF TITLE IX, 20 USC §1681(A), *ET SEQ.*, AGAINST DEFENDANT MSU AND  DEFENDANT MSU TRUSTEES

122.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

123.     Title IX's statutory language states, "No *person* in the United States shall on the basis of sex, be … subject to discrimination under any education program or activity receiving Federal financial assistance …"

124.     Plaintiff is a "person" under the Title IX statutory language.

125.     Defendant MSU receives federal financial assistance for its education program and is therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C.

§1681(a), *et seq.*

126.     Defendant MSU is required under Title IX to investigate allegations of sexual assault, sexual abuse, and sexual harassment.

127.     The U.S. Department of Education's Office of Civil Rights has explained that Title IX covers all programs of a school, and extends to sexual harassment and assault by employees, students and third parties.

128.     Defendant Nassar's actions and conduct were carried out under one or more of Defendant MSU programs, which provides medical treatment to students, athletes, and the public.

129.    Defendant Nassar's conduct and actions toward Plaintiff, that being nonconsensual digital vaginal and/or anal penetration, touching of Plaintiff's vaginal area, and/or touching of Plaintiff's breasts constitutes sex discrimination under Title IX.

130.    By at least 1999, before Plaintiff was Defendant Nassar's patient, and as early as 1997 or 1998, an "appropriate person" at Defendant MSU had actual knowledge of the sexual assault, abuse, and molestation committed by Defendant Nassar.

131.    The MSU Defendants failed to carry out their duties to investigate and take corrective action under Title IX following complaints of sexual assault, abuse, and molestation in or around 1999 and 2000.

132.    The MSU Defendants were notified again in 2014 of Defendant Nassar's conduct when a victim reported she had an appointment with Defendant Nassar to address hip pain and was sexually abused and molested by Defendant Nassar when he cupped her buttocks, massaged her breast and vaginal area, and he became sexually aroused.

133.    The victim reported to Defendant MSU facts which were omitted or withheld from the investigative report including but not limited to the following:

    a.    Defendant Nassar was sexually aroused while touching her;

    b.    The appointment with Defendant Nassar did not end until she physically removed his hands from her body.

134.    Three months after initiating an investigation, in July 2014, the victim's complaints were dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Defendant Nassar's conduct "medically appropriate" and "Not of a sexual nature."

135.    Following the investigation, upon information and belief, Defendant Nassar

became subject to new institutional guidelines, one of which – it is believed – was that Defendant Nassar was not to examine or treat patients alone.

136.     The MSU Defendants failed to adequately supervise or otherwise ensure Defendant Nassar complied with the newly imposed institutional guidelines even though the MSU Defendants had actual knowledge Nassar posed a substantial risk of additional sexual abuse of females whom he had unfettered access.

137.     After the 2014 complaints Defendant Nassar continued to sexually assault, abuse, and molest individuals.

138.     The MSU Defendants acted with deliberate indifference to known acts of sexual assault, abuse, and molestation on its premises by:

      a.   failing to investigate and address allegations as required by Title IX;

      b.   failing to adequately investigate and address the 2014 complaint regarding Defendant Nassar's conduct; and,

      c.   failing to institute corrective measures to prevent Defendant Nassar from violating and sexually abusing other students and individuals, including minors.

139.     The MSU Defendants acted with deliberate indifference as its lack of response to the allegations of sexual assault, abuse, and molestation was clearly unreasonable in light of the known circumstances, Defendant Nassar's actions with female athletes, and his access to young girls and young women.

140.     The MSU Defendants' deliberate indifference was confirmed by the Department of Education's investigation into Defendant MSU's handling of sexual assault and relationship violence allegations which revealed:

      d.   A sexually hostile environment existed and affected numerous students and staff

on Defendant MSU's campus;

e.   That the University's failure to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner caused and may have contributed to a continuation of the sexually hostile environment.

141.   The MSU Defendants' responses were clearly unreasonable as Defendant Nassar continued to sexually assault female athletes and other individuals until he was discharged from the University in 2016.

142.   Between the dates of approximately 1996 and 2016, the MSU Defendants acted in a deliberate, grossly negligent, and/or reckless manner when they failed to reasonably respond to Defendant Nassar's sexual assaults and sex-based harassment of Plaintiff.

143.   The MSU Defendants failed warn or advise current and former patients of Defendant Nassar, including Plaintiff, that allegations could surface that in fact the treatments that the patients received was not medical treatment at all but was potentially sexual assault.

144.   The MSU Defendants failed to offer counseling services to current of former patients of Defendant Nassar, including Plaintiff.

145.   The MSU Defendants' failure to promptly and appropriately investigate and remedy and respond to the sexual assaults after they received notice subjected Plaintiff to further harassment and a sexually hostile environment, effectively denying them all access to educational opportunities at MSU, including medical care.

146.   As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiff has suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will

continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**B.   COUNT 2 – VIOLATION OF THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983 AGAINST DEFENDANT MSU, DEFENDANT MSU TRUSTEES, AND DEFENDANT NASSAR**

147.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

148.   Plaintiff, as a female, is a member of a protected class under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

149.   Plaintiff enjoys the constitutionally protected Due Process right to be free from the invasion of bodily integrity through sexual assault, abuse, or molestation.

150.   At all relevant times, Defendants MSU, MSU Trustees, and Nassar were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant Michigan State University.

151.   The acts as alleged above amount to a violation of these clearly established constitutionally protected rights, of which reasonable persons in the MSU Defendants' positions should have known.

152.   The MSU Defendants have the ultimate responsibility and authority to train and supervise its employees, agents, and/or representatives, in the appropriate manner of detecting, reporting, and preventing sexual abuse, assault, and molestation and as a matter of acts, custom, policy, and/or practice, failed to do so with deliberate indifference.

153.   As a matter of custom, policy, and and/or practice, the MSU Defendants had and have the ultimate responsibility and authority to investigate complaints against their employees,

agents, and representatives from all individuals including, but not limited to students, visitors, faculty, staff, or other employees, agents, and/or representatives, and failed to do so with deliberate indifference.

154.    The MSU Defendants had a duty to prevent sexual assault, abuse, and molestation on their campus and premises, that duty arising under the above-referenced constitutional rights, as well as established rights pursuant to Title IX.

155.    Defendant MSU's internal policies provide that "[a]ll University employees ... are expected to promptly report sexual misconduct or relationship violence that they observe or learn about and that involves a member of the University community (faculty, staff or student) or occurred at a University event or on University property." They state further: "[t]he

employee must report all relevant details about the alleged relationship violence or sexual misconduct that occurred on campus or at a campus-sponsored event. .. "

156.    Defendant MSU's aforementioned internal policies were violated in or around 1999 when an individual reported sexual assault, abuse, and molestation by Defendant Nassar to MSU representatives including trainers and a coach and no action was taken to address her complaints.

157.    Defendant MSU's aforementioned internal policies were violated in 2000 when another individual reported sexual assault, abuse, and molestation by Defendant Nassar to MSU representatives including trainers and no action was taken to address her complaints.

158.    The MSU Defendants' failure to address the above-described complaints led to an unknown number of individuals being victimized, sexually assaulted, abused, and molested by Defendant Nassar.

159.    Additionally, the MSU Defendants' failure to properly address the 2014 complaint regarding Defendant Nassar's conduct also led to others being victimized, sexually assaulted,

abused and molested by Defendant Nassar.

160.    Ultimately, Defendants MSU and MSU Trustees  failed to adequately and properly investigate the complaints by Defendant Nassar's other patients or other similarly-situated individuals including but not limited to failing to:

     a.   perform a thorough investigation into improper conduct by Defendant Nassar with Plaintiffs after receiving complaints in 1999 and 2000;

     b.   thoroughly review and investigate all policies, practices, procedures and training materials related to the circumstances surrounding the conduct of Defendant Nassar

     c.   recognize sexual assault when reported in 2014 and permitting University officials to deem sexual assault as "medically appropriate" and "not of a sexual nature;" and,

     d.   ensure all institutional guidelines issued following the 2014 investigation into Defendant Nassar's conduct were satisfied.

161.    As indicated in the U.S. Department of Education Office of Civil Rights report, the MSU Defendants had a culture that permitted a sexually hostile environment to exist affecting numerous individuals on Defendant MSU's campus, including Plaintiff.

162.    Also indicated in the report was Defendant MSU's custom, practice, and/or policy of failing to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner which caused and may have contributed to a continuation of the sexually hostile environment.

163.    By failing to prevent the aforementioned sexual assault, abuse, and molestation upon Plaintiff, and by failing to appropriately respond to reports of Defendant Nassar's sexual

assault, abuse, and molestation in a manner that was so clearly unreasonable it amounted to deliberate indifference, the MSU Defendants are liable to Plaintiff pursuant to 42 U.S.C.§1983.

164.    The MSU Defendants are also liable to Plaintiffs under 42 U.S.C. §1983 for maintaining customs, policies, practices which deprived Plaintiffs of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. §1983.

165.    The MSU Defendants tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline Defendant Nassar, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiff with impunity.

166.    The MSU Defendants failed warn or advise current and former patients of Defendant Nassar, including Plaintiff, that allegations could surface that in fact the treatments that the patients received was not medical treatment at all but was potentially sexual assault.

167.    The MSU Defendants failed to offer counseling services to current of former patients of Defendant Nassar, including Plaintiff.

168.    As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiff suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

C.    **COUNT 3 – FAILURE TO TRAIN AND SUPERVISE IN VIOLATION OF 42 U.S.C. § 1983, AGAINST DEFENDANT MSU AND DEFENDANT MSU TRUSTEES**

169.    Plaintiff realleges and incorporates by reference the allegations contained in the

previous paragraphs.

170. The MSU Defendants have the ultimate responsibility and authority to train and supervise its employees, agents, and/or representatives including Defendant Nassar and all faculty and staff regarding their duties toward students, faculty, staff, and visitors.

171. The MSU Defendants failed to train and supervise its employees, agents, and/or representatives including all faculty and staff, regarding the following duties:

  a. Perceive, report, and stop inappropriate sexual conduct on campus;

  b. Provide diligent supervision over student-athletes and other individuals;

  c. Report suspected incidents of sexual abuse or sexual assault;

  d. Ensure the safety of all students, faculty, staff, and visitors to Defendant MSU's campuses premises;

  e. Provide a safe environment for all students, faculty, staff, and visitors to Defendant MSU's premises free from sexual harassment; and,

  f. Properly train faculty and staff to be aware of their individual responsibility for creating and maintaining a safe environment.

172. The above list of duties is not exhaustive.

173. The MSU Defendants failed to adequately train coaches, trainers, medical staff, and others regarding the aforementioned duties which led to violations of Plaintiff's rights.

174. As a result, the MSU Defendants deprived Plaintiff of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. §1983.

175. The MSU Defendants failed warn or advise current and former patients of Defendant Nassar, including Plaintiff, that allegations could surface that in fact the treatments that the patients received was not medical treatment at all but was potentially sexual assault.

176. The MSU Defendants failed to offer counseling services to current of former patients of Defendant Nassar, including Plaintiff.

177. As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiff suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

D.   **COUNT 4 – VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 AGAINST DEFENDANT MSU AND DEFENDANT MSU TRUSTEES, AGAINST DEFENDANT MSU, DEFENDANT MSU TRUSTEES, AND DEFENDANT NASSAR**

178. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

179. The Elliot-Larsen Civil Rights Act ("Elliot-Larsen") prohibits discrimination based on sex. MCL 37.2102.

180. "Discrimination because of sex includes sexual harassment." MCL 37.2.103(i).

181. "Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature." MCL 37.2103(i).

182. Elliot-Larsen protects against sexual harassment in educational institutions.

183. MSU is an educational institution pursuant to MCL 37.2401.

184. An educational institution shall not "discriminate against an individual in the *full utilization of or benefit* from the institution, or the services, activities, or programs provided by the institution because of . . . sex." MCL 37.2401(a) (emphasis added).

185. Elliot-Larsen also protects against sexual harassment in places of public

accommodation. MCL 37.2302. Under this section, an individual shall not be denied "full   and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of . . . sex." MCL37.2302(a).

186.    MSU is a "place of public accommodation" because its "services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public." MCL37.2301(a).

187.    Plaintiff is or was a minor is a "person" within the meaning of MCL37.2103(g).

188.    Nassar's actions and conduct were carried out under one of MSU's programs, which provides medical treatment to students, athletes, and the general public, wherein MSU, through MSU Sport Medicine Clinic, solicits and markets to people like Plaintiff,   and places Plaintiff minor within the University community.

189.    Nassar's actions and conduct toward Plaintiff denied her the full and equal enjoyment of MSU's services at a place of public accommodation, in violation of Elliot- Larson.

190.    Nassar's actions and conduct toward Plaintiff of nonconsensual sexual assault, battery, and molestation, which includes unconsented touching, rubbing, and/or penetrating Plaintiff's genitalia, constitutes sex discrimination under Elliot-Larsen.

191.    As a direct and/or proximate result of the MSU and Nassar's actions and inactions, Plaintiff has suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life,  and  has sustained and continues to sustain loss of earnings and earning capacity.

E.    **COUNT 5 – GROSS NEGLIGENCE AGAINST DEFENDANT MSU, DEFENDANT MSU BOARD OF TRUSTEES AND DEFENDANT NASSAR**

192. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

193. The MSU Defendants owed Plaintiff a duty to use due care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents, including Defendant Nassar.

194. Defendant Nassar owed Plaintiff a duty of due care in carrying out medical treatment as an employee, agent, and/or representative of the MSU Defendants.

195. By seeking medical treatment from Defendant Nassar in the course of his employment, agency, and/or representation of the MSU Defendants, a special, confidential, and fiduciary relationship between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use due care.

196. The MSU Defendants' failure to adequately supervise Defendant Nassar, especially after MSU knew or should have known of complaints regarding his nonconsensual sexual touching and assaults during "treatments" was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

197. Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff in the course of his employment, agency, and/or representation of the MSU Defendants and under the guise of rendering "medical treatment" was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

198. The MSU Defendants' conduct demonstrated a willful disregard for precautions to ensure Plaintiff's safety.

199. The MSU Defendants' conduct as described above, demonstrated a willful disregard for substantial risks to Plaintiff.

200. The MSU Defendants breached duties owed to Plaintiff and were grossly negligent when they conducted themselves by the actions described above, said acts having been committed with reckless disregard for Plaintiff's health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

201. The MSU Defendants failed warn or advise current and former patients of Defendant Nassar, including Plaintiff, that allegations could surface that in fact the treatments that the patients received was not medical treatment at all but was potentially sexual assault.

202. The MSU Defendants failed to offer counseling services to current of former patients of Defendant Nassar, including Plaintiff.

203. As the direct and/or proximate result of Defendants' actions and/or inactions, Plaintiff suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## F. COUNT 6 – NEGLIGENCE AS TO DEFENDANT MSU, DEFENDANT MSU TRUSTEES, AND DEFENDANT NASSAR

204. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

205. The MSU Defendants owed Plaintiff a duty of ordinary care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives and/or agents.

206. By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of the MSU Defendants, a special, confidential, and

fiduciary relationship between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use ordinary care.

207.    Defendant Nassar owed Plaintiffs a duty of ordinary care.

208.    The MSU Defendants' failure to adequately train and supervise Defendant Nassar breached the duty of ordinary care.

209.    The MSU Defendants had notice through its own employees, agents, and/or representatives as early as 1997, again in 1999, again in 2000, and again in 2014 of complaints of a sexual nature related to Defendant Nassar's purported "treatments" with young girls and women.

210.    The MSU Defendants should have known of the foreseeability of sexual abuse with respect to youth and collegiate sports.

211.    The MSU Defendants' failure to properly investigate, address, and remedy complaints regarding Defendant Nassar's conduct was a breach of ordinary care.

212.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff in the course of his employment, agency, and/or representation of the MSU Defendants was a breach of the duty to use ordinary care.

213.    The MSU Defendants failed warn or advise current and former patients of Defendant Nassar, including Plaintiff, that allegations could surface that in fact the treatments that the patients received was not medical treatment at all but was potentially sexual assault.

214.    The MSU Defendants failed to offer counseling services to current of former patients of Defendant Nassar, including Plaintiff.

215.    As a direct and/or proximate result of the MSU Defendants' conduct, actions and/or inactions, Plaintiff suffered and continues to suffer pain of mind and body, shock,

emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### G. COUNT 7 – VICARIOUS LIABILITY AGAINST DEFENDANT MSU AND DEFENDANT MSU TRUSTEES

216. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

217. Vicarious liability is indirect responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do so.

218. Vicarious liability essentially creates agency between the principal and its agent, so that the principal is held to have done what the agent has done.

219. The MSU Defendants employed and/or held Defendant Nassar out to be its agent and/or representative from approximately 1996 to 2016.

220. Defendant MSU's website contains or had contained hundreds of pages portraying Defendant Nassar as a distinguished member of Defendant MSU's College of Osteopathic Medicine, Division of Sports Medicine.

221. The MSU Defendants are vicariously liable for the actions of Defendant Nassar as described above that were performed during the course of his employment, representation, and/or agency with the MSU Defendants and while he had unfettered access to young female athletes on MSU's campus and premises through its College of Osteopathic Medicine and Division of Sports Medicine

222.    As a or the direct and/or proximate result of Defendant Nassar's actions carried out in the course of his employment, agency, and/or representation of the MSU Defendants, Plaintiff suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### H.    COUNT 8 – EXPRESS/IMPLIED AGENCY AS TO DEFENDANT MSU AND DEFENDANT MSU TRUSTEES

223.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

224.    An agent is a person who is authorized by another to act on its behalf.

225.    The MSU Defendants intentionally or negligently made representations that Defendant Nassar was their employee, agent, and/or representative.

226.    On the basis of those representations, Plaintiff reasonably believed that Defendant Nassar was acting as an employee, agent, and/or representative of the MSU Defendants.

227.    Plaintiff was injured as a result of Defendant Nassar's sexual assault, abuse, and molestation as described above, acts that were performed during the course of his employment, agency, and/or representation with the MSU Defendants and while he had unfettered access to young female athletes.

228.    Plaintiff was injured because they relied on the MSU Defendants to provide employees, agents, and or representatives who would exercise reasonable skill and care.

229.    As a or the direct and/or proximate cause of Defendant Nassar's negligence carried out in the course of his employment, agency, and/or representative of the MSU

Defendants, Plaintiff suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

I.      **COUNT 9 – NEGLIGENT SUPERVISION AGAINST DEFENDANT MSU AND DEFENDANT MSU TRUSTEES**

230.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

231.    The MSU Defendants had a duty to provide reasonable supervision of their employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency or representation with the MSU Defendants and while he interacted with young female athletes including Plaintiff.

232.    It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar who had prior allegations against him had or would sexually abuse children, including Plaintiff, unless properly supervised.

233.    The MSU Defendants by and through their employees, agents, managers and/or assigns, such as President Simon, President McPherson, Dean Strampel or Dr. Kovan knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children.

234.    The MSU Defendants breached their duty to provide reasonable supervision of Defendant Nassar, and permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiff.

235.     The aforementioned sexual abuse occurred while Plaintiff and Defendant Nassar were on the premises of Defendant MSU, and while Defendant Nassar was acting in the course of his employment, agency, and/or representation of the MSU Defendants.

236.     The MSU Defendants tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline such individuals, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiff with impunity.

237.     The MSU Defendants failed warn or advise current and former patients of Defendant Nassar, including Plaintiff, that allegations could surface that in fact the treatments that the patients received was not medical treatment at all but was potentially sexual assault.

238.     The MSU Defendants failed to offer counseling services to current of former patients of Defendant Nassar, including Plaintiff.

239.     As a or the direct and/or proximate result of the MSU Defendants' negligent supervision, Plaintiff suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## J.     COUNT 10 – NEGLIGENT FAILURE TO WARN OR PROTECT AGAINST DEFENDANT MSU AND DEFENDANT MSU TRUSTEES

240.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

241.     The MSU Defendants knew or should have known that Defendant Nassar posed

a risk of harm to Plaintiff or those in Plaintiff's situation.

242.    As early as 1997, the MSU Defendants had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

243.    The MSU Defendants knew or should have known Defendant Nassar committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

244.    The MSU Defendants had a duty to warn or protect Plaintiff and others in Plaintiff's situation against the risk of injury by Defendant Nassar.

245.    The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar as an employee, agent, and or representative of the MSU Defendants and Plaintiff.

246.    The MSU Defendants breached said duty by failing to warn Plaintiff and/or by failing to take reasonable steps to protect Plaintiff from Defendant Nassar.

247.    The MSU Defendants breached its duties to protect Plaintiff by failing to:

    a.  respond to allegations of sexual assault, abuse, and molestation;

    b.  detect and/or uncover evidence of sexual assault, abuse, and molestation; and,

    c.  investigate, adjudicate, and terminate Defendant Nassar's employment with Defendant MSU prior to 2016.

248.    The MSU Defendants failed to adequately screen, counsel and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician at an educational institution, resulting in violations of Plaintiff's rights.

249.    The MSU Defendants willfully refused to notify, give adequate warning, and

implement appropriate safeguards to protect Plaintiff from Defendant Nassar's conduct.

250.    The MSU Defendants failed warn or advise current and former patients of Defendant Nassar, including Plaintiffs, that allegations could surface that in fact the treatments that the patients received was not medical treatment at all but was potentially sexual assault.

251.    As a or the direct and/or proximate result of the MSU Defendants negligent failure to warn or protect, Plaintiff suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### K.    COUNT 11 – NEGLIGENCE FAILURE TO TRAIN OR EDUCATE AGAINST DEFENDANT MSU AND DEFENDANT MSU TRUSTEES

252.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

253.    The MSU Defendants breached their duty to take reasonable protective measures to protect Plaintiff and other minors or adults from the risk of childhood sexual abuse and/or sexual assault by Defendant Nassar, such as the failure to properly train or educate Plaintiff and other individuals (including minors) about how to avoid such a risk.

254.    The MSU Defendants failed to implement reasonable safeguards to:

   a.   Prevent acts of sexual assault, abuse, and molestation by Defendant Nassar;

   b.   Avoid placing Defendant Nassar in positions where he would be in unsupervised contact and interaction with Plaintiffs and other young athletes.

255.    As a or the direct and/or proximate result of the MSU Defendants' negligent failure

to train or educate, Plaintiff suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## L.     COUNT 12 – NEGLIGENT RETENTION AGAINST DEFENDANT MSU AND DEFENDANT MSU TRUSTEES

256.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

257.     The MSU Defendants had a duty when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents and/or representatives to exercise due care, but they failed to do so.

258.     The MSU Defendants were negligent in the retention of Defendant Nassar as an employee, agent, and/or representative in their failure to adequately investigate, report and address complaints about his conduct of which they knew or should have known.

259.     The MSU Defendants were negligent in the retention of Defendant Nassar as an employee, agent, and/or representative when after they discovered, or reasonably should have discovered Defendant Nassar's conduct which reflected a propensity for sexual misconduct.

260.     The MSU Defendants' failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to and sexually abusing and/or sexually assaulting Plaintiff and an unknown number of other individuals.

261.     The aforementioned negligence in the credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Nassar created a foreseeable risk

of harm to Plaintiff as well as other minors and young adults.

262.    As a or the direct and/or proximate result of the MSU Defendants' negligent retention, Plaintiff suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life; were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; have sustained and continue to sustain loss of earnings and earning capacity.

## M.    COUNT 13 – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT MSU AND DEFENDANT MSU TRUSTEES

263.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

264.    The MSU Defendants allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults.

265.    A reasonable person would not expect the MSU Defendants to tolerate or permit their employee or agent to carry out sexual assault, abuse, or molestation after they knew or should have known of complaints and claims of sexual assault and abuse occurring during Defendant Nassar's "treatments."

266.    The MSU Defendants held Defendant Nassar in high esteem and acclaim which in turn encouraged Plaintiff and others to respect and trust Defendant Nassar and seek out his services and to not question his methods or motives.

267.    The MSU Defendants protected Defendant Nassar in part to bolster and sustain his national and international reputation in the gymnastics community.

268.    A reasonable person would not expect the MSU Defendants to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of

sexual assault, abuse, and molestation.

269.    The MSU Defendants failed warn or advise current and former patients of Defendant Nassar, including Plaintiff, that allegations could surface that in fact the treatments that the patients received was not medical treatment at all but was potentially sexual assault.

270.    The MSU Defendants' conduct as described above was intentional and/or reckless.

271.    As a or the direct and/or proximate result of the MSU Defendants' conduct, Plaintiff suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**N.    COUNT 14 – FRAUD AND MISREPRESENTATION AS TO DEFENDANT MSU, DEFENDANT MSU TRUSTEES, AND DEFENDANT NASSAR**

272.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

273.    From approximately 1996 to September 2016, the MSU Defendants represented to Plaintiff and the public that Defendant Nassar was a competent and safe physician.

274.    By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with USAG, the MSU Defendants represented to Plaintiff and the public that Defendant Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiffs and the public need not worry about being harmed by Defendant Nassar.

275.    The representations were false when they were made as Defendant Nassar had

and was continuing to sexually assault, abuse, and molest Plaintiff and an unknown number of other individuals.

276.     As early as 1998, the MSU Defendants knew their representations of Defendant Nassar were false at least two individuals had complained of Defendant Nassar's conduct to MSU representatives.

277.     Although the MSU Defendants were informed of Defendant Nassar's conduct they failed to investigate, remedy, or in any way address the complaints.

278.     The MSU Defendants continued to hold Defendant Nassar out as a competent and safe physician.

279.     Additional complaints against Defendant Nassar surfaced in 2014, however, because of Defendant MSU's culture which included existence of a sexually hostile environment on Defendant MSU's campus and premises and the University's failure to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner which in turn caused and may have contributed to a continuation of the sexually hostile environment, Defendant Nassar was permitted to continue employment and sexually abuse, assault, and molest Plaintiff and an unknown number of other individuals.

280.     Plaintiff was subjected to sexual assault, abuse, and molestation as a result of the MSU Defendants' fraudulent misrepresentations regarding Defendant Nassar.

281.     As a direct and/or proximate result of the MSU Defendants' fraudulent misrepresentations, Plaintiff suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full

enjoyment of life; have sustained and continue to sustain loss of earnings and earning capacity.

## VI.    CLAIMS AGAINST DEFENDANT USA GYMNASTICS

### O.    COUNT 15 – GROSS NEGLIGENCE AGAINST DEFENDANT USAG AND DEFENDANT NASSAR

282.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

283.    Defendant USAG owed the public and the Plaintiff a duty to use due care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents.

284.    At all relevant times, Plaintiff was a member of Defendant USAG, participated in USAG sanctioned events, and/or were knowledgeable of USAG and considered it to be a prestigious organization. Upon information and believe, Plaintiff had been referred to Defendant Nassar through USAG affiliations.

285.    Defendant Nassar owed Plaintiff a duty to use due care in his capacity as an employee, representative, and/or agent of Defendant USAG.

286.    By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of Defendant USAG, a special, confidential, and fiduciary relationship between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use due care.

287.    Defendant USAG's failure to adequately supervise Defendant Nassar was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

288.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff under the guise of rendering medical "treatment" as an employee, representative, and/or

agent of Defendant USAG was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

289.   Defendant USAG's conduct demonstrated a willful disregard for necessary precautions to reasonably protect Plaintiff's safety.

290.   Defendant USAG's conduct as described above, demonstrated a willful disregard for substantial risks to Plaintiff.

291.   Defendant USAG breached duties owed to Plaintiff and were grossly negligent when they conducted themselves by actions described above, including but not limited to their failure to notify MSU about the reasons for Nassar's separation from USAG and more broadly the issues surrounding sexual abuse in gymnastics and warning signs and reporting requirements. Said acts were committed with reckless disregard for Plaintiff's health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

292.   As a direct and/or proximate result of Defendant USAG'S actions and/or inactions, Plaintiff suffered continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

P.   **COUNT 16 – NEGLIGENCE AGAINST DEFENDANT USAG AND DEFENDANT NASSAR**

293.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

294.   Defendant USAG owed the public and Plaintiff a duty of ordinary care to ensure

their safety and freedom from sexual assault, abuse, and molestation while being treated by their employees, representatives, and agents.

295.    Plaintiff had a reasonable expectation that Defendant USAG was recommending, employing, and holding out competent and ethical physicians and trainers for medical treatment who would carry out said treatment without sexual assault, abuse, and molestation.

296.    By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of Defendant USAG, a special, confidential, and fiduciary relationship between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use ordinary care.

297.    Defendant Nassar owed Plaintiffs duty of ordinary care in carrying out medical treatment.

298.    Defendant USAG's failure to adequately train and supervise Defendant Nassar breached the duty of ordinary care.

299.    Defendant USAG's failure to properly investigate, address, and remedy complaints regarding Defendant Nassar's conduct was a breach of ordinary care.

300.    Defendant USAG's failure to inform Plaintiff and the public of the allegations and concerns leading to Defendant Nassar's separation from USAG was a breach of ordinary care.

301.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff was a breach of the duty to use ordinary care.

302.    As a direct and/or proximate result of Defendants' conduct, actions and/or inactions, Plaintiff suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem,

disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**Q. COUNT 17 – VICARIOUS LIABILITY AGAINST DEFENDANT USAG**

303. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

304. Vicarious liability is indirect responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do so.

305. Vicarious liability essentially creates agency between the principal and its agent, so that the principal is held to have done what the agent has done.

306. At all relevant times, Defendant USAG's website contained sites portraying Defendant Nassar as the recipient of distinguished awards and boasts him as having been "instrumental" to the success of USA gymnastics.

307. Defendant USAG employed and/or held Defendant Nassar out to be its agent and/or representative from approximately 1986 to 2015.

308. Defendant USAG is vicariously liable for the actions of Defendant Nassar as described above that were performed during the course of his employment, representation, or agency with Defendant USAG and while he had unfettered access to young female athletes.

309. As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the course of his employment, agency, and/or representation with Defendant USAG, Plaintiff suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief,

humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**R.   COUNT 18 – EXPRESS/IMPLIED AGENCY AGAINST DEFENDANT USAG**

310.   Plaintiff realleges and incorporates by reference the allegations contained int eh previous paragraphs.

311.   An agent is a person who is authorized by another to act on its/his/her behalf.

312.   Defendant USAG intentionally or negligent made representations that Nassar was its employee, agent, and/or representative.

313.   On the basis of those representations, Plaintiff reasonably believed Defendant Nassar was acting as an employee, agent, and/or representation of Defendant USAG.

314.   Plaintiff was injured as a result of Defendant Nassar's sexual assault, abuse, and molestation as described above and carried out through his employment, agency, and/or representations with Defendant USAG.

315.   Plaintiff was injured because she relied on Defendant USAG to provide employees or agents who would exercise reasonable skill, care, and professionalism.

316.   As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the course of his employment, agency, and/or representation with Defendant USAG Plaintiff suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**S.   COUNT 19 – NEGLIGENT SUPERVISION AGAINST DEFENDANT USAG**

330.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

331.     Defendant USAG had a duty to provide reasonable supervision of its employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency and/or representation of Defendant USAG and while he interacted with young female athletes including Plaintiff.

332.     It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar who had prior allegations against him had or would sexually abuse children, including Plaintiff, unless properly supervised.

333.     Defendant USAG by and through their employees, agents, managers and/or assigns such as Mr. Penny or Mr. Colarossi, knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children and young adults.

334.     Defendant USAG breached its duty to provide reasonable supervision of Defendant Nassar, and its failure permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiff.

335.     The aforementioned sexual abuse occurred while Defendant Nassar was acting in the course of his employment, agency and/or representation of Defendant USAG.

336.     Defendant USAG tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel or discipline Defendant Nassar, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiff with impunity.

337.     As a direct and/or proximate result of Defendant USAG's negligent supervision,

Plaintiff suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### T.   COUNT 20 – NEGLIGENT FAILURE TO WARN OR PROTECT AGAINST DEFENDANT USAG

338.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

339.   Given the direct or indirect knowledge of sexual abuse in youth sports and in particular gymnastics, it was reasonably foreseeable that sexual abuse of minors may occur if proper procedures were not taken by Defendant USAG.

340.   Defendant USAG knew or should have known that Defendant Nassar posed a risk of harm to Plaintiff or those in Plaintiff's situation.

341.   Defendant USAG had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

342.   Defendant USAG knew or should have known that Defendant Nassar previously committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

343.   Defendant USAG had a duty to warn or protect the public, Plaintiff, and others in Plaintiff's situation against the risk of injury by Defendant Nassar.

344.   The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar in his capacity as employee, agent, and/or representative of Defendant USAG and Plaintiff.

345. Defendant USAG breached said duty by failing to warn the public and Plaintiff and/or by failing to take reasonable steps to protect the public and Plaintiff from Defendant Nassar.

346. Defendant USAG breached its duties to protect Plaintiff by failing to detect and/or uncover evidence of sexual abuse and sexual assault, investigate Defendant Nassar, adjudicate and suspend and/or ban Defendant Nassar from USAG affiliation and USAG sanctioned events.

347. Defendant USAG failed to adequately screen, counsel and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician in his capacity as an employee, agent, and/or representative of Defendant USAG, resulting in violations of Plaintiff's rights.

348. Defendant USAG willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiffs from Defendant Nassar's conduct.

349. As a direct and/or proximate result of Defendant USAG's negligent failure to warn or protect, Plaintiff suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## U. COUNT 21 – NEGLIGENT FAILURE TO TRAIN OR EDUCATE AGAINST DEFENDANT USAG

350. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

351. Defendant USAG breached its duty to take reasonable protective measures to

protect the public and Plaintiffs from the risk of sexual abuse and/or sexual assault by Defendant Nassar, such as the failure to properly train or educate Plaintiff and other individuals (including minors) about how to avoid such a risk.

352. Defendant USAG failed to implement reasonable safeguards to:

    a. Prevent acts of sexual assault, abuse, and molestation by Defendant Nassar;

    b. Avoid placing Defendant Nassar in positions where he would be in unsupervised contact and interaction with Plaintiff and other young athletes.

353. As a direct and/or proximate result of Defendant USAG's negligent failure to train or educate, Plaintiff suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## V. COUNT 22 – NEGLIGENT RETENTION AGAINST DEFENDANT USAG

354. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

355. Defendant USAG had a duty when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents and/or representatives to exercise due care, but they failed to do so.

356. Defendant USAG was negligent in the retention of Defendant Nassar as an employee, agent, and/or representative in their failure to adequately investigate, report, and address complaints about his conduct of which they knew or should have known.

357. Defendant USAG was negligent in the retention of Defendant Nassar when after they discovered, or reasonably should have discovered Defendant Nassar's conduct which reflected a propensity for sexual misconduct.

358. Defendant USAG's failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to and sexually abusing and/or sexually assaulting Plaintiff as well as an unknown number of other individuals.

359. The aforementioned negligence in the credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Nassar created a foreseeable risk of harm to Plaintiff as well as other minors and young adults.

360. As a direct and/or proximate result of Defendant USAG's negligent retention, Plaintiff suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## W.     COUNT 23 – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT USAG

361. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

362. Defendant USAG allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults.

363. A reasonable person would not expect Defendant USAG to tolerate or permit their employee, agent, or representative to carry out sexual assault, abuse, or molestation.

364. Defendant USAG held Defendant Nassar in high esteem and acclaim which in

turn encouraged Plaintiffs and others to respect and trust Defendant Nassar and seek out his services and to not question his methods or motives.

365.    Defendant USAG protected Defendant Nassar in part to bolster his national and international reputation in the gymnastics community.

366.    A reasonable person would not expect Defendant USAG to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse and molestation.

367.    Defendant USAG's conduct as described above was intentional and/or reckless.

368.    As a direct and/or proximate result of Defendant USAG's intentional infliction of emotional distress, Plaintiff suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## X.    COUNT 24 – FRAUD AND MISREPRESENTATION AGAINST DEFENDANT USAG

369.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

370.    From approximately 1996 to summer 2015, Defendant USAG represented to Plaintiff and/or her parents  and the public that Defendant Nassar was a competent, ethical, and safe physician.

371.    By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, Defendant

USAG represented to Plaintiff and the public that Defendant Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiff and the public need not worry about being harmed by Defendant Nassar.

372.     The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiff and an unknown number of other individuals.

373.     Additionally, complaints were made to Defendant USAG, yet Defendant USAG did not contact Plaintiff, the MSU Defendants, or any other clubs, or organizations affiliated with Defendant Nassar to inform them of the allegations and potential harm to Plaintiff and others.

374.     Plaintiff relied on the assertions of Defendant USAG and several Plaintiff and several other girls, children and athletes continued to seek treatment of Defendant Nassar in the wake of known concerns and dangers.

375.     Plaintiff was subjected to sexual assault, abuse, and molestation as a result of Defendant USAG's fraudulent misrepresentations regarding Defendant Nassar.

376.     As a direct and/or proximate result of Defendant USAG's fraud and misrepresentation, Plaintiff suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## VII.    CLAIMS AGAINST DEFENDANT LAWRENCE NASSAR (INDIVIDUAL CAPACITY)

### Y.    COUNT 25 – ASSAULT AND BATTERY AGAINST DEFENDANT NASSAR

377. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

378. The acts committed by Defendant Nassar against Plaintiff described herein constitute assault and battery, actionable under the laws of Michigan.

379. Defendant Nassar committed nonconsensual sexual acts which resulted in harmful or offensive contact with Plaintiff's body.

380. Specifically, Defendant Nassar committed acts which caused injury to Plaintiff by subjecting her to an imminent battery and/or intentional invasions of their rights to be free from offensive and harmful contact, and said conduct demonstrated that Defendant had a present ability to subject Plaintiff to an immediate, intentional, offensive and harmful touching.

381. Defendant Nassar assaulted and battered Plaintiff by nonconsensual and unwanted digital vaginal penetration, digital anal penetration, and/or touching Plaintiff's breasts without notice or explanation of the "treatment."

382. Plaintiff did not consent to the contact, which caused injury, damage, loss, and/or harm.

383. As a direct and/or proximate result of Defendant Nassar's negligent failure to train or educate, Plaintiff suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**Z. COUNT 26 – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT NASSAR**

384. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

385. Defendant Nassar used his authority and position with Defendants MSU and USAG to sexually assault, abuse, and molest Plaintiff, and an unknown number of other individuals, minors, and young adults.

386. Defendant Nassar in committing acts of sexual assault, abuse, and molestation as described above under the guise of medical "treatment" exhibited conduct that is extreme, outrageous and/or reckless in nature.

387. A reasonable person would not expect their physician to sexually assault, abuse, or molest them, and to do so under the guise of medical "treatment" without proper notice or explanation, and without giving the patient the opportunity to refuse "treatment" of that nature.

388. Defendant Nassar's conduct was intentional or reckless as he repeatedly sexually assaulted, abused, and molested Plaintiff over several years, from approximately 1998 to 2002.

389. Defendant Nassar's conduct has caused and continues to cause Plaintiff to suffer emotional and psychological distress.

390. As a direct and/or proximate result of Defendant Nassar's misconduct, Plaintiff suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## ZZ.    COUNT 27 – INVASION OF PRIVACY AGAINST DEFENDANT NASSAR

391. Plaintiff realleges and incorporates by reference the allegations contained in the

previous paragraphs.

392.    Defendant Nassar intruded upon Plaintiff's seclusion or solitude by sexually assaulting, abusing, and molesting Plaintiff without her or her parent's consent.

393.    Plaintiff's genital, anal, and chest areas and virginity are secret and private and personal subject matters.

394.    Plaintiff possessed a right to keep those subject matters private.

395.    Defendant Nassar's method of sexually assaulting, abusing , and molesting Plaintiff is objectionable to a reasonable person.

396.    As a direct and/or proximate result of Defendant Nassar's misconduct, Plaintiff suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## VIII.    DAMAGES FOR ALL AFOREMENTIONED CLAIMS AND COUNTS

344.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

345.    As a direct and/or proximate result of Defendants' conduct, actions, or inactions, Plaintiff suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

346.    The conduct, actions and/or inactions of Defendants as alleged in the above stated counts and causes of action constitute violations of Plaintiff's Constitutional and Federal rights as well as the common and/or statutory laws of the State of Michigan, and the United States District Court has jurisdiction to hear and adjudicate said claims.

347.    In whole or in part, as a result of some or all of the above actions and/or inactions of Defendants, Plaintiff has and continues to suffer irreparable harm as a result of the violations.

348.    The amount in controversy for Plaintiff exceeds the jurisdictional minimum of $75,000.00.

## IX.    PRAYER FOR RELIEF

FOR THE REASONS STATE ABOVE, Plaintiff request this Court and the finder of fact to enter a Judgment in Plaintiff's favor against all named Defendants on all counts and claims as indicated above in an amount consistent with the proofs of trial, and seeks against Defendants all appropriate damages arising out of law, equity, and fact for each or all of the above counts where applicable and hereby requests that the trier of fact, be it judge or jury, award Plaintiff all applicable damages, including but not limited to compensatory, special, exemplary and/or punitive damages, in whatever amount Plaintiff is entitled, and all other relief arising out of law, equity, and fact, also including but not limited to:

A)    Compensatory damages in an amount to be determined as fair and just under the circumstances, by the trier of fact including, but not limited to medical expenses, loss of earnings, mental anguish, anxiety, humiliation, and embarrassment, violation of Plaintiff's Constitutional, Federal, and State rights, loss of social pleasure and enjoyment, and other damages to be proved;

B)    Punitive and/or exemplary damages in an amount to be determined as reasonable or just by the trier of fact;

C)    Reasonable attorney fees, interest, and costs; and,

D)      Other declaratory, equitable, and/or injunctive relief, including, but not limited to implementation of institutional reform and measures of accountability to ensure the safety and protection of young athletes and other individuals, as appears to be reasonable and just.

<div style="text-align: center;">Respectfully Submitted,</div>

Dated: September 4, 2018                 /s/ Jessica Rose Rieffel_____
                                        Jessica Rose Rieffel, P82397
                                        Gower Law, PLC (Of Counsel)
                                        Attorney for Plaintiff
                                        514 E. Midland St.
                                        Bay City, MI 48706
                                        989-894-0100 (Phone)
                                        989-894-0200 (Fax)
                                        Jessica@gowerlaw.com (email)

## JURY DEMAND

Plaintiff MEGAN MARIE LADRIGUE, by and through her attorney, Jessica Rose Rieffel, of counsel at Gower Law, PLC, hereby demands a trial by jury on all claims set forth above.

<div style="text-align: center;">Respectfully Submitted,</div>

Dated: September 4, 2018                 /s/ Jessica Rose Rieffel_____
                                        Jessica Rose Rieffel, P82397
                                        Gower Law, PLC (Of Counsel)
                                        Attorney for Plaintiff
                                        514 E. Midland St.
                                        Bay City, MI 48706
                                        989-894-0100 (Phone)
                                        989-894-0200 (Fax)
                                        Jessica@gowerlaw.com (email)